UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:24-cv-60241-LEIBOWITZ/HUNT

**BABETTE FRIEDMAN**,

    *Plaintiff,*

v.

**TOWN OF PEMBROKE PARK
and GEOFFREY JACOBS**,

    *Defendants.*

_____/

## ORDER

**THIS CAUSE** is before the Court upon Defendants Town of Pembroke Park (the "Town") and Geoffrey Jacobs' ("Jacobs") (collectively "Defendants") Motion to Dismiss the Second Amended Complaint (the "Complaint") (the "Motion") [ECF No. 41]. The Court has carefully considered the briefing, the record, and the applicable law. For the reasons set forth below, the Motion [ECF No. 41] is **GRANTED** on all counts.

**I.    BACKGROUND**

Babette Friedman ("Plaintiff" or "Friedman") is the Town's former Director of Human Resources. [ECF No. 38 ¶ 4]. Friedman served as the Director of Human Resources for the Town from August 2022 until September 2023. [*Id.*]. The Town is a municipal government entity and recognized as an agency within the scope of Section 122.3187(3)(a), Florida Statutes. [*Id.* ¶ 5]. Jacobs became a commissioner of a three-member Commission for the Town in January 2019. [*Id.* ¶ 16]. On August 2, 2023, Plaintiff resigned from the Town "effective September 2, 2023," and claims constructive discharge from her employment. [*Id.* ¶¶ 83, 101].

Plaintiff sues Defendants on three counts: violation of Section 112.3187, Florida Statutes ("the Whistle-blower's Act" or "the Act"), against the Town (Count I); retaliation in violation of the First Amendment against Jacobs under 42 U.S.C. § 1983 (Count II); and retaliation in violation of the First Amendment against the Town under 42 U.S.C. § 1983 (Count III). [*See generally id.* at 19, 21, 23].

## II.   LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Although this pleading standard "does not require 'detailed factual allegations,' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

On a motion to dismiss, the district court construes the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).  Unsupported allegations and conclusions of law, however, will not benefit from this favorable reading.  *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

## III.   DISCUSSION

**Count 1:  Violation of Section 112.3187, Florida Statutes, against the Town of Pembroke Park**

To prevail on a claim under Florida's Whistle-blower's Act, a plaintiff must demonstrate that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) the adverse employment action was causally linked to the statutorily protected activity. *Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 462 (Fla. Dist. Ct. App. 2015).

Defendants argue that the Complaint fails to state a valid claim against the Town under Florida's Whistle-blower's Act because: (1) Plaintiff fails to establish that she engaged in any statutorily protected activity; (2) Plaintiff fails to establish that she incurred any adverse employment action; and (3) Plaintiff cannot establish the requisite "but-for" causal connection between any claimed protected activity and her purported constructive discharge. [*See generally* ECF No. 41]. Each of these is considered in turn.

### A. Statutorily Protected Expression

To determine whether Plaintiff has engaged in statutorily protected expression, she must meet the requirements of the Act. First, the information revealed must include "[a]ny violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare," or "[a]ny act or suspected act of gross mismanagement, malfeasance, misfeasance, … or gross neglect of duty committed by an employee or agent of an agency or independent contractor." Fla. Stat. § 112.3187(5)(a)-(b). Second, for disclosures concerning a local government entity, "the information must be disclosed to a chief executive officer as defined in s. 447.203(9) or other appropriate local official." Fla. Stat. § 112.3187(6). Third, Plaintiff must be a protected employee or person under the statute. The Act protects five categories of employees and persons: (1) those who disclose information on their own initiative in a written and signed complaint; (2) those who are requested to participate in an investigation, hearing, or other inquiry conducted by

3

any agency or federal government entity; (3) those who refuse to participate in any adverse action prohibited by this section; (4) those who initiate a complaint through the whistle-blower's hotline or the hotline of the Medicaid Fraud Control Unit of the Department of Legal Affairs; and (5) employees who file any written complaint to their supervisory officials or employees who submit a complaint to the Chief Inspector General in the Executive Office of the Governor, to the employee designated as agency inspector general under Fla. Stat. § 112.3189(1), or to the Florida Commission on Human Relations.  Fla. Stat. § 112.3187(7).  The Court need not consider all the requirements if one requirement is not met.  *See Lanier v. City of Miami*, 2024 WL 81385, at *3 (S.D. Fla. Jan. 5, 2024).

As explained more fully below, the Court finds that Plaintiff's disclosures fail to meet the requirements of statutorily protected expression.  Plaintiff did not engage in statutorily protected expression because her March 23, 2023, May 8, 2023, and June 21, 2023, disclosures fail to identify a specific violation of any law or act of gross misconduct.  *See* Fla. Stat. § 112.3187(5)(a)-(b).  The March 23, 2023, May 8, 2023, and June 21, 2023, disclosures also do not meet the statutory requirement that employees must "disclose information on their own initiative *in a written and signed complaint*[.]"  *See* Fla. Stat. § 112.3187(7) (emphasis added).  Furthermore, Plaintiff's April 12, 2023, disclosure was not the result of a request to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity.

The Court has considered the following four alleged disclosures at issue: (1) a text message from Plaintiff to the Town Manager on March 23, 2023; (2) a written "complaint" in the form of an email to the Town Manager and Interim Attorney on May 8, 2023; (3) Plaintiff's speech at the April 12, 2023 commission meeting; and (4) a second written "complaint" to the Town Manager on June 21, 2023.  [ECF No. 38 ¶¶ 55, 71, 94, 78].

### *March 23, 2023 Text Message*

"On March 23, 2023, Ms. Friedman submitted a text message to the Town Manager, warning that Jacobs' continued harassment might compel her and the complainants to lodge a formal complaint against him for creating a hostile work environment and engaging in retaliation." [*Id.* ¶ 55]. The Complaint does not indicate whether the text message was signed.

This text message does not qualify as statutorily protected expression because it does not include "[a]ny violation or suspected violation of any federal, state, or local law, rule, or regulation … [that] presents a substantial and specific danger to the public's health, safety, or welfare" or "any act or suspected act of gross mismanagement, malfeasance, misfeasance, …or gross neglect of duty[.]" Fla. Stat. § 112.3187(5)(a)-(b). Plaintiff's text message merely informs the Town Manager that if Jacobs' alleged behavior of harassment continues, then Plaintiff and others *might* make a formal complaint against him. [ECF No. 38 ¶ 55]. That is not sufficient under Fla. Stat. § 112.3187(5)(a)-(b). Because Plaintiff fails to identify a specific violation of any law or act of gross misconduct, the March 23, 2023 text message does not qualify as statutorily protected expression.

### *April 12, 2023 Statement*

The Complaint also alleges that "[o]n April 12, 2023, Plaintiff made a protected disclosure after being requested to participate in an investigation, hearing, or other inquiry conducted by an agency." [ECF No. 38 ¶ 94]. Plaintiff argues that she was "requested to participate in an inquiry," when she was asked by "[o]ne newly elected Commissioner (the new mayor) [as to] whether Commissioners could ask for an investigation about violations of the Civility Code." [ECF No. 44 at 10; *id.* ¶ 61].

This question by the Commissioner differs from other situations where courts have determined that someone was requested to participate in an investigation or other inquiry. For example, in *Igwe v. City of Miami*, 208 So. 3d 150, 155 (Fla. Dist. Ct. App. 2016), the Court found that Plaintiff was a protected person under Section 112.3187(7) because of his disclosures to the SEC as part of the SEC's

5

investigation of the City of Miami.  In another case, *Burden v. City of Opa Locka*, 2012 WL 4764592, at *14 (S.D. Fla. Oct. 7, 2012), this Court determined that a plaintiff's statement giving information to a Confidential Inquiry to investigate charges levied against the police department established a *prime facie* case for a protected activity under the Florida Whistle-blower's Act.

The instant case differs from these two because Plaintiff was not asked to participate in an ongoing investigation, hearing, or other inquiry when she was simply asked what the Town's policy was regarding investigations for violations of the Civility Code.  At the time the new mayor asked the question, no investigation or inquiry was ongoing.  Thus, the Court finds that Plaintiff did not engage in any statutorily protected expression with regards to her April 12, 2023, statement.

### *May 8, 2023 Email Submission*

On May 6, 2023, Plaintiff alleges that Jacobs called her a Nazi at a public food drive.  [ECF No. 38 ¶ 70].  As a result of this, on May 8, 2023, "Ms. Friedman submitted a formal complaint via email to the Town Manager and Interim Attorney regarding the "Nazi" comment, warning of legal action if Jacobs' behavior persisted."  [*Id.* ¶ 71].  The Complaint does not state whether the email was signed.  This email submission, however, does not qualify as statutorily protected expression because it does not include "[a]ny violation or suspected violation of any federal, state, or local law, rule, or regulation … [that] presents a substantial and specific danger to the public's health, safety, or welfare" or "any act or suspected act of gross mismanagement, malfeasance, misfeasance, …or gross neglect of duty[.]"  Fla. Stat. § 112.3187(5)(a)-(b).

Like the March 23, 2023 text message, Plaintiff's email to the Town Manager and Interim Attorney similarly warns of legal action that *may* be taken in response to Jacobs' behavior.  [ECF No. 38 ¶ 71].  Vague statements that are conclusory in nature do not qualify for protection under the statute.  *See Lanier*, 2024 WL 81385, at *4.  Furthermore, emails do not qualify as protected activity under the

6

Whistle-blower's Act when they fail to identify any specific violation of law or supposed gross misconduct. *Henley v. City of N. Miami*, 329 So. 3d 791, 794–95 (Fla. Dist. Ct. App. 2021). Here, Plaintiff's May 8, 2023, email submission does not identify any violation of law or supposed gross misconduct and thus fails to qualify as statutorily protected expression. *See* Fla. Stat. § 112.3187(5)(a)-(b).

### *June 21, 2023 Submission*

The Complaint alleges that on June 21, 2023, "Ms. Friedman filed a detailed complaint against Jacobs with the Town Manager, documenting instances of bullying, intimidation, and unethical behavior in violation of the Civility Code[.]" [ECF No. 38 ¶ 78]. However, Ms. Freidman's "complaint" simply states: "I would like to submit a formal complaint against Commissioner Jacobs for his demeaning behavior at the June 14, 2023, meeting and the following social media attacks of intimidation, bullying, and slanderous/libel comments made about myself and IT Director Mark Pakula on June 15 and 16th (see attached)." [*Id.*]. The Complaint does not indicate whether the "complaint" was signed.

Once again, Plaintiff does not meet the statutorily required disclosure element because she fails to present "[a]ny violation or suspected violation of any federal, state, or local law, rule, or regulation … [that] presents a substantial and specific danger to the public's health, safety, or welfare," or "any act or suspected act of gross mismanagement, malfeasance, misfeasance, …or gross neglect of duty," by Jacobs. Fla. Stat. § 112.3187(5)(a)-(b).

In addition and alternatively, the Court also holds that the form of the March 23, 2023, May 8, 2023, and June 21, 2023 submissions do not meet the statutory requirement that employees must "disclose information on their own initiative in a written and signed complaint[.]" *See* Fla. Stat. § 112.3187(7). "The purpose of the statutory requirement of a signed writing is to document what the

7

employee disclosed, and to whom the employee disclosed it, thus avoiding problems of proof for purposes of the Whistle-blower's Act." *Batz v. City of Sebring*, 794 F. App'x 889, 902 (11th Cir. 2019) (quoting *Walker v. Fla. Dep't of Veterans' Affairs*, 925 So. 2d 1149, 1150 (Fla. 4th DCA 2006)). The legislature required that complaints be written *and signed* to qualify; the requirement of signing makes clear that the statements are authenticated and attributable to a specific person and rise to a level of formality that forms the actual basis of a complaint under the statute.

There is no indication that the email or text message was signed by Friedman. (Indeed, it is inherent in the requirement that a complaint be signed that a text message likely cannot form the basis of a qualifying complaint under the statute, at least without evidence of some kind of electronic signature.) On this record, the Court is not convinced that the email or text message satisfies the requirement that the information be disclosed in a written and signed complaint. *See McAlpin v. Sneads*, 61 F.4th 916, 931 n.1 (11th Cir. 2023). Thus, the Court holds that not only did the March 23, 2023 text message, May 8, 2023 email, and June 21, 2023 submission fail to present any violation of law or act of gross misconduct, they each also fail to satisfy the statutory requirement that the information be disclosed in a written and signed complaint. *See* Fla. Stat. § 112.3187(7).

Because none of Plaintiff's four alleged disclosures qualify as statutorily protected expression, Plaintiff fails to satisfy the first element of a claim under Florida's Whistle-blower's Act.

### B. Adverse Employment Action (Constructive Discharge)

Even though Plaintiff fails to establish she engaged in statutorily protected expression, the Court will still consider whether she suffered an adverse employment action. Plaintiff alleges that the "[t]he Town took adverse personnel action against [her] by constructively discharging her and taking other adverse action against her[.]" [ECF No. 38 ¶ 100]. Plaintiff further alleges that "[t]he adverse personal actions, individually and collectively, caused a constructive discharge of [her]." [*Id.* ¶ 101].

8

Constructive discharge can qualify as an adverse employment action. *See Conner v. Centurion of Fla., LLC*, 2021 WL 4979429, at *9 (N.D. Fla. Jan. 19, 2021). To successfully claim constructive discharge, a plaintiff must demonstrate that working conditions were "so intolerable that a reasonable person in [her] position would have been compelled to resign." *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir. 1997). The burden of proof is quite high and this "onerous task" "requires pervasive and severe conduct by the employer going beyond that required for a hostile work environment claim." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 858–59 (11th Cir. 2023) (citing *Bryant v. Jones*, 575 F.3d 1281, 1298–99, 1307 (11th Cir. 2009)). Plaintiff in the instant case has failed to meet that high burden.

An employee's decision to continue working after submitting their resignation generally nullifies a claim for constructive discharge. *See Rogers-Libert v. Miami-Dade Cty.*, 184 F. Supp. 2d 1273, 1286–87 (S.D. Fla. 2001); *Whitner v. Emory Univ.*, 2008 WL 4224407, at *17 (N.D. Ga. Sept. 12, 2008). Here, Plaintiff remained working for one month after submitting her resignation to the Town, substantially diminishing her claim that conditions were so intolerable that resignation was compelled. [ECF No. 38 ¶ 83]. If conditions were intolerable enough to compel resignation, then Plaintiff would have resigned and left immediately. *See Harper v. Ulta Salon Cosms. & Fragrance, Inc.*, 2007 WL 528088, at *28 (N.D. Ga. Feb. 13, 2007); *Whitner*, 2008 WL 4224407 at *17. Thus, the Court finds that Plaintiff cannot state a claim for constructive discharge and therefore has not alleged she suffered an adverse employment action.

### C. Causation

To prevail on a claim under the Act, Plaintiff must also show a causal relation between the protected activity and adverse employment action. *Olbek v. City of Wildwood, FL*, 850 Fed. App'x. 714, 721 (11th Cir. 2021). The Whistle-blower's Act requires a "but-for" causal link as the standard to

prove a causal connection in retaliation cases. *Lapham v. Walgreen Co.*, 88 F.4th 879, 893–94 (11th Cir. 2023), *cert. denied*, 2024 WL 4426640 (U.S. Oct. 7, 2024). "But-for" causation is proven when an outcome would not have occurred without the specific cause in question. *Id.*

Because Plaintiff failed to demonstrate that she engaged in statutorily protected expression and suffered an adverse employment action, the Court need not consider whether there was a causal relation between the two alleged events.

Based on the foregoing, Plaintiff has failed to establish a claim under the Florida Whistleblower's Act. Count I is dismissed with prejudice.

**Counts 2 and 3: First Amendment Retaliation against Jacobs and the Town**

Defendants argue that the Complaint fails to state a valid claim against Jacobs for First Amendment retaliation because: (1) Plaintiff did not engage in constitutionally protected speech; (2) there was no adverse effect on free speech; (3) Plaintiff fails to allege a causal connection between her purported protected disclosures and her resignation; and (4) Commissioner Jacobs cannot be held liable in his individual capacity. [*See generally* ECF No. 41]. Defendants argue that the Complaint fails to state a valid claim against the Town for First Amendment retaliation because: (1) Plaintiff did not engage in constitutionally protected speech; (2) there was no adverse effect on free speech; (3) Plaintiff fails to allege a causal connection between her claimed protected speech and purported constructive discharge; (4) there is no unconstitutional policy or custom alleged; and (5) there is no *Monell* final policy-maker theory. [*See generally id.*].

The Court need not address all of these arguments, however, because Jacobs and the Town are correct that Plaintiff's speech was not protected by the First Amendment.

**A. Applicable Law**

10

"[P]ublic employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). In order for First Amendment protections to attach to a public employee's speech, two conditions must be met. First, the speech or expression must be made in the employee's capacity as a citizen rather than as an employee. *See Boyce v. Andrew*, 510 F.3d 1333, 1341–42 (11th Cir. 2007) (citing *Kurtz v. Vickrey*, 855 F.2d 723, 727 (11th Cir. 1988)). Speech made "pursuant to official responsibilities" is entitled to no protection under the First Amendment. *See Garcetti*, 547 U.S. at 424. Second, even if the speech is made in the employee's capacity as a citizen, the speech must be "on a matter of public concern." *Id.* at 418. If these two conditions are met, a public employee's speech is entitled to First Amendment protections provided "the employee's [F]irst [A]mendment interests [outweigh] 'the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees.'" *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

The two threshold conditions that need to be met for public employee speech to be protected under the First Amendment—the "speaking as a citizen" condition and the "matter of public concern" condition—are "closely intertwined." *Alves v. Bd. of Regents of the Univ. Sys. of Georiga*, 804 F.3d 1149, 1165 n. 5 (11th Cir. 2015). They are, nonetheless, distinct conditions that must be evaluated separately. *See id.*

Determining whether the "speaking as a citizen" condition has been met requires an inquiry into whether "the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane v. Franks*, 573 U.S. 228, 240 (2014). If an employee speaks "in furtherance of his … responsibilities" as an employee, then the speech is made as an

11

employee, not as a citizen, and is not entitled to First Amendment protections. *See Moss v. City of Pembroke Pines*, 782 F.3d 613, 619–20 (11th Cir. 2015). In determining what the employee's responsibilities are, "[t]he proper inquiry is a practical one. Formal job descriptions often bear little resemblance to the duties an employee actually is expected to perform, and the listing of a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Garcetti*, 547 U.S. at 424–25.

The "matter of public concern" inquiry requires an examination of the "content, form, and context" of the speech to determine whether the speech, "can be fairly considered as relating to any matter of political, social, or other concern to the community." *Lane*, 573 U.S. at 241 (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)) (cleaned up). Speech on a matter of public concern includes speech concerning "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* (quoting *Snyder*, 562 U.S. 443 at 453) (cleaned up). However, a government employee cannot "transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir. 1986). To distinguish speech that is nothing more than a grievance in disguise from true "speech on a matter of public concern," it is appropriate to inquire into "the employee's attempt to make her concerns public along with the employee's motivation in speaking." *Alves*, 804 F.3d at 1162.

### B. Analysis

Defendants argue that Plaintiff's speech at the April 12, 2023, commission meeting is not protected speech under the First Amendment because the speech was given in Plaintiff's capacity as the Town's Director of Human Resources and was not regarding a matter of public concern but rather

a matter of a personal, employment-related nature. [ECF No. 41 at 23]. A review of the entire record leads the Court to conclude that Plaintiff's April 12, 2023 speech was not protected speech.

Friedman alleges that at the April 12, 2023 meeting, "[o]ne newly elected Commissioner (the new mayor) asked whether Commissioners could ask for an investigation about violations of the Civility Code. Ms. Friedman was asked to answer the question. Ms. Friedman discussed the new investigation policy that was passed the last meeting[.]" [ECF No. 38 ¶ 61]. Friedman responded to the question and "then read from her written statement she had been preparing since March 28, 2023[.]" [*Id.* ¶¶ 61, 62]. When Friedman first addressed the Commissioner's question at the meeting, she introduced herself as "Babette Freedman, Human Resources Director." [*Id.* ¶ 62].

It is clear to the Court that, as pleaded, Friedman was responding to an inquiry in her role as Director of Human Resources and then took the opportunity to address the Commission regarding her concerns towards Commissioner Jacobs' actions. However, even when her speech changed to addressing her comments regarding Commissioner Jacobs, she again reiterated her role "[a]s the Human Resources Director[.]" [*Id.*]. If she was "speaking as a citizen," offering her job title in her speech seems out of place, although that fact is not dispositive.

Determining whether the "speaking as a citizen" condition has been met requires an inquiry into whether "the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Lane*, 573 U.S. at 240. The Complaint alleges that "Director of Human Resources may not investigate, administer disciplinary actions, or enforce alleged infractions of the Civility Code by Town Commissioners." [ECF No. 38 ¶ 46]. Therefore, Plaintiff argues that "[i]f she had the authority to investigate and discipline a Town Commissioner, then she would not have needed to ask the Commission to take action." [ECF No. 44 at 20].

Even if the Court agrees with Plaintiff that Plaintiff's speech was "as a citizen" because the subject-matter of the speech was not within the scope of her duties, the speech must also be "on a matter of public concern," to warrant First Amendment protection. The Court finds that Plaintiff's speech was *not* "on a matter of public concern" and is therefore not entitled to First Amendment protections. It is clear from the whole record that Plaintiff's speech was motivated primarily by a desire to reveal her personal grievances against and concerns about Commissioner Jacobs, for the purpose of improving her working environment. While this is not by itself determinative, when combined with other facts —(a) the fact that Plaintiff was speaking as a result of the "toxic and abusive behavior by Commissioner Jacobs that he has put us all through" [ECF No. 38 ¶ 62], (b) the fact that Plaintiff was speaking for "current and past employees who do not have a voice here tonight" [ECF No. 38 ¶ 62], (c) the fact that Plaintiff was "asking the commission to be aware of Commissioner Jacobs' verbal attacks" [ECF No. 38 ¶ 62], and (d) the fact that Plaintiff's speech took place as the result of an inquiry directed at her during the commission meeting—they suggest that Plaintiff was attempting to "transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way" the Town was run. *See Keller v. City of Tallahassee*, 181 F. Supp. 3d 934, 951–52 (N.D. Fla. 2015).

More broadly, the Court does not find that Plaintiff's speech concerned "a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane*, 573 U.S. at 241 (quoting *Snyder*, 562 U.S. 443 at 453) (cleaned up). As such, Plaintiff's speech was not on a matter of public concern, and Plaintiff's speech was not protected by the First Amendment.

Therefore, Plaintiff has failed to state a cause of action against Jacobs and the Town under 42 U.S.C. § 1983 for retaliation in violation of the First Amendment. Count II and Count III of Plaintiff's Second Amended Complaint are dismissed with prejudice.

## CONCLUSION

For the reasons explained above, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [**ECF No. 41**] is **GRANTED** on all Counts.  Counts I, II, and III of Plaintiff's Second Amended Complaint are dismissed with prejudice.  The Clerk of Court is *directed* to **CLOSE** this case.  Any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in the Southern District of Florida on November 15, 2024.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:   counsel of record